C. A. DURR PACKING CO., Inc. v. SHAUGHNESSY.

Civ. No. 2779.

United States District Court
N. D. New York.

July 23, 1948.

34

Ferris, Burgess, Hughes & Dorrance, of Utica (Russell Dunmore, of Utica, of counsel), for plaintiff.

.Irving J. Higbee, U. S. Atty., of Syracuse, and Ruppert Bingham, Sp. Asst. to Atty. Gen. (Edmond Port, of Syracuse, of counsel), for defendant.

BRENNAN, Chief Judge.

The plaintiff seeks a money judgment which represents an alleged overpayment of income taxes in the amount of $5,301, paid by the plaintiff in accordance with its income tax return filed for the fiscal year ending October 31, 1940.

The facts are undisputed, and will be briefly outlined.

The plaintiff (hereinafter called "Durr"), has been engaged for a number of years in the processing of meat at Utica, New York. At all times referred to herein its books were kept and income tax returns were made upon an accrual basis. In 1933, 1934 and 1935, the plaintiff paid substantial processing taxes under the provisions of the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq. The sums so paid were claimed as deductions upon its income tax returns filed for such years. Such taxes were held to be invalid June 6, 1936. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. On June 29, 1937, the plaintiff filed claims for refund of processing tax in the amount of $350,289.56, and for floor stocks taxes in the amount of $4,568.87. The claims were filed under the provisions of Title VII of the Revenue Act of 1936, § 901 et seq., 7 U.S.C.A. §§ 623 note, 644 et seq., which became effective on June 22, 1936, after conferences and negotiations, and on October 29, 1940, a check in the amount of $27,900, plus interest of about $10,000, was issued by the Treasury Department to the plaintiff in settlement of its claim for processing and floor stocks taxes paid by it during the years above mentioned. The claim for floor stocks tax refund was apparently denied in toto, and this litigation involves only the claim for refund of processing tax. The plaintiff had not accrued any sum of money on account of said refund or claim upon its books or in its income tax returns prior to 1940, but did report the sum of $27,900 so refunded upon the taxpayer's income tax return for the fiscal year ending October 31, 1940. The tax thereon was paid, and on November 9, 1943, the plaintiff filed a claim for refund in the amount of $5,301, claiming in substance that it was a mistake or error to include the above item of $27,900 in its 1940 tax return, but that it did in fact accrue in the fiscal year 1936. It appears that in 1936, the income tax return filed by the plaintiff resulted in no tax being imposed, and, even if the sum of $27,900 had been accrued and reported in that year, no tax would be pay-

able. The claim for refund was denied and this action followed.

Plaintiff contends that having kept its books upon an accrual basis, the refund of $27,900 in fact and in law accrued in the year 1936, by reason of the Supreme Court decision above referred to, and the subsequent passage of Title VII of the Revenue Act of 1936, which in substance provides for and limits the right to the repayment of the invalid tax above referred to. Its contention is based upon the claim that its right to a refund was unconditionally fixed in 1936, and that every fact fixing the amount thereof also existed in 1936. It relies upon the cases of Commissioner v. Dumari, etc., 2 Cir., 142 F.2d 897, and the Continental Tie and Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111.

The defendant contends that the refund did not in fact accrue until 1940, and was properly includable in the taxpayer's income tax for that year. He contends that the plaintiff's right to receive the income did not become fixed or readily ascertainable in the year 1936, and further urges that the plaintiff is estopped from including the amount thereof in its taxable income during the year 1936, since it did not accrue any part of the refund claimed, either in that year or in any year prior to 1940. The defendant also claims that in the event that it is held that the claimed refund accrued in 1936 so as to be includable in the taxpayer's 1936 income tax return, the total amount of claimed refund; to wit, about $350,000, should be so included, and that defendant is entitled to set off the amount of the refund in this action against the tax which would have been imposed had the total claim for processing taxes been accrued in 1936.

The main point in this litigation involves the determination of the much litigated question as to whether or not the facts and circumstances exist which would warrant a finding that the amount of the refund did in fact and law accrue in 1936.

Judicial precedents designed to clarify and define a taxpayer's right of accrual do not always accomplish their purpose. The opening paragraphs of the opinion in Frost Lumber Industries v. Commissioner, 5 Cir., 128 F.2d 693, are descriptive of the problem which is found here. The logical approach seems to be the determination of the attributes which the courts have found must exist in a claim or liability before it may be said to have accrued.

The case of United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, is repeatedly urged as an authority holding that when all of the events have occurred which fixed the amount of the tax and determined the liability of the taxpayer to pay, then it may be said that the liability therefor has accrued. This rather broad rule seems to have been limited in its application to such claims or liabilities which are reasonably certain in fact, and ascertainable in amount. Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. "It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent * * *." Security Flour Mills Co. v. Commissioner, 321 U.S. 281, at page 284, 64 S.Ct. 596, at page 597, 88 L.Ed. 725. "The requirement of valuation comprehends the element of collectibility." Helvering v. Enright's Estate, 312 U.S. 636, 61 S.Ct. 777, 782, 85 L.Ed. 1093.

From the above authorities it appears that a claim may be accrued by a taxpayer for tax purposes when, (a), all of the events have occurred, which fix the amount of the claim and determine the question of liability; (b), the amount is readily ascertainable; (c), the liability therefor is determined rather than contingent.

The question here is whether or not the sum of $27,900 was includable in the taxpayer's income for its taxable year ending October 31, 1940, in which year it was paid and reported in the taxpayer's tax return or was such amount includable by the taxpayer in its taxable year of 1936. The determination of the question requires the application of the rules above referred to.

It would seem that the facts or events fixing the amount of the claimed refund and Durr's right to recover in the instant case were in existence in 1936. It is true that a claim had not been filed by

the taxpayer until 1937, but this was a procedural requirement which does not prevent the application of the rule. See Commissioner v. Dumari, etc., supra.

The determinations as to whether or not the taxpayer's right to a refund was fixed and the amount thereof readily ascertainable in 1936 are more difficult problems.

■ Since the ultimate conclusion must be subjected to a practical rather than a legal test (Lucas v. American Code Co., supra), two arguments advanced by the defendant will first be considered. The defendant urges, not without force, that the discrepancy between the amount claimed by Durr, to wit, approximately $350,000, and the actual amount of the refund, $27,900, is in itself proof that the true amount of the refund due the plaintiff was not readily ascertainable. The defendant also contends that the fact that the taxpayer did not accrue as an item of income any part or percentage of its claim for refund in 1936 is a further indication that the taxpayer itself was unable to ascertain with any degree of certainty the amount thereof. The practicalities of the existing situation, however, are not overlooked. The statute dealing with Durr's right to a refund was new legislation in 1936; its provisions were capable of different interpretations, and its application was uncertain, as attested to by the number of decisions referring thereto. The filing of the claim in the amount in which it was filed may well be considered as a matter of precaution rather than indicating any distinct effort on the part of the taxpayer or its counsel to ascertain the exact amount of the refund due. The defendant's arguments are not conclusive.

The statute under the provisions of which the claim for refund was made, Title VII, Sections 901–917 of the Revenue Act of 1936, has been the subject of much discussion in many reported cases, which are cited by the litigants in support of their respective contentions. In brief, the Act set up an administrative procedure, subject to judicial review, which was designed to provide that a refund of processing taxes paid to the government should be made to the taxpayer only in the event that he, in fact, bore the burden of the tax. Claims supported by verified evidence were to be filed, which would warrant the Commissioner in acting thereon. A procedure was outlined by which a comparison was made between the margin of profit received by the taxpayer during the period when the taxes were collected with the margin before and after the passage of the Agricultural Adjustment Act. If such comparison showed that the margin to the taxpayer was lower during the period of tax collection, that fact constituted prima facie evidence that the burden of the tax was to that extent borne by the claimant. If the comparison showed that the margin was not lower, then that fact was prima facie evidence that the taxpayer bore none of the burden of the tax. The presumptions thus created were rebuttable. Either party might offer proof in support of its contention, and such proof is not limited to that referred to in the statute, so that any relevant evidence, including expert testimony, would be competent. The evidence must be weighed, and the decision made accordingly. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Webre Steib Co. v. Commissioner, 324 U.S. 164, 65 S.Ct. 578, 89 L.Ed. 819. It would, therefore, follow that, unlike the Continental Tie and Dumari cases, where all the data was contained in the books and records of the taxpayer, the taxpayer here could not tell whether or not the government would accept the prima facie proof afforded by the comparison of margins, and correspondingly no one could be certain that the taxpayer would rely upon its book records for the final determination of the amount of tax actually assumed by it. In the last two mentioned cases the computation of the amount of the claim was a ministerial act, confined within prescribed limits. Here the computation was subject to an adversary administrative proceeding, wherein the rules of evidence applicable in courts of equity of the District of Columbia were to apply. At best the determination in many cases was a difficult one. Webre Steib Co. v. Commissioner, supra. The burden of proof imposed upon the claimant was a heavy one. Franklin Peanut Co. v. Commissioner, 4 Cir., 144 F.2d 979. Impossibility of de-

termination after the receipt of evidence has been urged as preventing the application of the statute. Anniston Mfg. Co. **v.** Davis, supra See also affidavit herein attached to application for refund of floor stocks taxes.

No weighty inference can be drawn from the fact that the claim was eventually settled after conferences and negotiation. The record does not disclose the basis of the settlement, except to show that it involved other and separate controversies, all of which were disposed of in the one settlement, although as separate items. It is apparent, however, that either the amount of the claim or the liability therefor was unsettled.

One would be obliged to discard the "practical test" to conclude that the amount of Durr's claim for refund was readily ascertainable in the year 1936. The statute involved, the rules laid down in the reported cases and the act of the taxpayer itself in failing to accrue and report any part of the claim until 1940 when subjected to such test, all lead to the opposite conclusion.

The fact that Durr had paid an invalid tax gave him no absolute or determined right of recovery. Its right was limited by the Revenue Act of 1936 to the qualification that such right did not exist unless and until it satisfied the burden of establishing that it had absorbed the tax as an economic fact. Cudahy Packing Co. v. United States, 7 Cir., 126 F.2d 429. The liability of the government was not unalterably fixed by the statute. Jamaica Water Supply Co. v. Commissioner, 2 Cir., 125 F.2d 512. It came into existence only when there was a determination by a commissioner or an administrative board acting in a judicial capacity that it had in fact paid and absorbed the tax sought to be recovered. Its right of recovery was contingent either upon the action of the commissioner or upon findings based upon proof the extent and nature of which was unlimited, except by the applicable rules of evidence. "When the right to receive an amount becomes fixed, the right accrues." Spring City Foundry Co. v. Commission 292 U.S. 182–184, 54 S.Ct. 644, 645, 78 L. Ed. 1200.

Claims which are subject to what amounts to judicial determination both as to liability and amount, such as in Lucas **v.** American Code Co., supra, are not accruable unless special circumstances exist. The basis of liability may be found in the law, but there must exist also a reasonable certainty that the claimant by reason of existing facts will bring himself within the basis prescribed. Practically no such certainty existed here, because whether or not a processor is able to show that he absorbed the tax involves the element of speculation up to at least the point that the evidence is produced for consideration.

The Court is aware that in some reported cases something less than a fixed right to receive monies has been accepted as a proper base for the right of accrual, such as in Commissioner v. Brooklyn Union Gas Co., 2 Cir., 62 F.2d 505, but here no reason is found which would warrant the slighting of the language of Section 902 of the Revenue Act, which in its title, viz.: "Conditions on allowances of refunds", and in the opening statement of the first paragraph, viz.: "No refund shall be made or allowed * * * unless the claimant establishes * * *" is persuasive that Congress intended to take away the absolute right of recovery of this particular invalid tax, and substitute a remedy which was contingent upon evidence to be produced and a finding to be made in the future, which concededly did not occur in 1936. "The line is hard to draw, (Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111); but when the claim was open to such contest both as to existence and amount, and especially when the taxpayer accepted a settlement of about half its face, it was not accruable." Buffalo Union Furnace Co. v. Helvering, 2 Cir., 72 F. 2d 399, at page 404.

The conclusion is reached that the amount of the refund is properly includable in Durr's tax return for 1940, and that the complaint must be dismissed.

In addition to the statements made in distinguishing the Continental Tie and Dumari cases, supra, upon which the plaintiff relies, it might be pointed out that the statutes involved in both decisions are entirely different than the one in the instant case.

In the Dumari case the taxpayer had actually accrued the claim as income, and the Court ruled that his action was proper. Here, the taxpayer made no such accrual. To permit such accrual now would involve the determination of equitable principles which are urged by the defendant, and the possible application of the statute of limitations, which, in view of the decision, are not herein determined.

Judgment is directed accordingly.